**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

JaMarlin Fowler,

Plaintiff,

v.

T-Mobile USA Incorporated, et al.,

Defendants.

No. CV-20-01516-PHX-DJH

**ORDER**

Before the Court are the Motions to Dismiss filed by Defendants Federal Communications Commission ("FCC") and Federal Trade Commission ("FTC") (collectively, "the United States") (Doc. 28); Defendant State of California ("California") (Doc. 12); and Defendant State of Arizona ("Arizona") (Doc. 14). Defendant T-Mobile USA Inc. ("T-Mobile") has filed a Motion to Dismiss and also seeks to have Plaintiff declared a vexatious litigant (Doc. 18).[1] *Pro se* Plaintiff JaMarlin Fowler ("Plaintiff") has responded to each motion (Docs. 25; 30; 34) and the respective Defendants have filed their reply briefs (Docs. 26; 27; 31; 35). The motions are therefore fully briefed and ready for resolution.

## I. Background

Plaintiff is a "full-time artist currently residing in the State of California." (Doc. 1 at 24). In his 40-page Complaint, Plaintiff alleges that on or before August 4, 2015,

[1] T-Mobile requests oral argument. (Doc. 18 at 1). The Court denies the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed.R.Civ.P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

Defendant "T-Mobile (formerly Sprint)" purchased a mobile device (the "2015 phone") belonging to Plaintiff from a third party[2] that contained a copy of Plaintiff's copyrighted screenplay. (*Id.* at 13-14, 24-25). He alleges that Sprint sold the third party a memory card, copied the contents of the phone onto the card, and then subsequently purchased the phone and sent it to its warehouse. (*Id.* at 14). Plaintiff alleges that this "first conversion" occurred "in Phoenix, Arizona in August of 2015," and all of this was done without his knowledge or consent. (*Id.* at 2, 14). Plaintiff says that he contacted Sprint's customer service regarding the issues of "the unauthorized acquisition of the Plaintiff's phone and content and the unjustly levied [early termination fee]," but the parties ultimately were unable to reach a resolution. (*Id.* at 17).

Plaintiff subsequently contacted the FTC and lodged a complaint against Sprint. (*Id.* at 19-20). The FTC directed Plaintiff to contact the FCC, but otherwise "did nothing to assist the Plaintiff." (*Id.* at 20). As he was instructed, Plaintiff lodged an online complaint against Sprint with the FCC, which the FCC served on Sprint. Plaintiff says that Sprint responded to his FCC complaint with "misleading and incorrect statements." (*Id.* at 21). After receiving additional information from Plaintiff, and then seeking additional explanation from Sprint, the FCC ultimately closed Plaintiff's complaint. (*Id.*) Plaintiff alleges that "the agency, namely Chairman Ajit Pai, is purposely avoiding its statutory duty to protect American Citizens." (*Id.* at 21). He says he is still being harmed as a result of the inaction of these agencies, and asks for an order compelling them "to investigate the actions of T-Mobile (formerly Sprint) and to make the findings public, specifically for the FCC as the Plaintiff believes this particular agency is agency captured by the wireless industry and needs transparency." (*Id.* at 21-22).

In August of 2017, another phone on Plaintiff's Sprint account (the "2017 phone") was "stolen, but recovered." (*Id.* at 26). Plaintiff says that "[p]rior to Plaintiff being contacted about the phone or it being returned, someone affiliated with Sprint went into

[2] Although not specified in his Complaint, past filings Plaintiff has made in other courts that arise from the same set of facts indicate that the unauthorized third party referenced here is the mother of Plaintiff's child, who resides in Arizona. (*See e.g.*, Doc. 18-5 at 3).

Plaintiff's account and unflagged the phone lost or stolen, and the phone began being used again." (*Id.*) The 2017 phone also contained a copy of Plaintiff's copyrighted screenplay. (*Id.* at 25). Plaintiff says he "has been harmed as a result of the missing, leaked or destroyed data that Plaintiff cannot replace, nor has any idea who else has a copy of the data since it was illegally accessed." (*Id.* at 26).

On August 21, 2017, Plaintiff filed a complaint against Sprint Spectrum LP a/k/a Sprint International Communications Corporation a/k/a Sprint PCS in the Central District of California for claims arising out of alleged conversion of Plaintiff's 2015 Phone. (*Id.* at 18; *see also* Doc. 18-4 at 1, docket of *Fowler v. Sprint PCS*, 8:17-cv-01436-JLS-DFM (C.D. Cal. 2017)).[3] On December 13, 2017, the court dismissed Plaintiff's complaint because Plaintiff had "not alleged sufficient facts to establish personal jurisdiction." (Doc. 18-5 at 5). The court noted that the corporate defendant there—Sprint PCS—was headquartered in Delaware, with its principal place of business in Kansas. (*Id.*) The court further noted that Plaintiff had "not presented any documents to show that his contract was with this defendant, nor that the bills he received were from this defendant." (*Id.*) The court gave Plaintiff twenty-one days to amend his complaint to allege "additional jurisdictional facts or identify[] a different defendant." (*Id.* at 7). Plaintiff did not amend his complaint, and it was administratively closed. (Doc. 18-4 at 6).

Exactly four months after the court dismissed Plaintiff's complaint without prejudice, Plaintiff filed another complaint, again in the Central District of California, against Defendants Sprint Spectrum L.P. ("Sprint Spectrum"), the FTC, and the FCC. (Doc. 18-6, docket of *Fowler v. Sprint Spectrum L.P*, 8:18-cv-00615-JLS-DFM (C.D. Cal. 2018)). He later amended his complaint to dismiss the federal agencies. (*Id.* at 3, Dkt. 14).

[3] For purposes of assessing personal jurisdiction, the Court only takes judicial notice of the exhibits to Plaintiff's Complaint (Doc. 1), and the matters of public record that are attached to T-Mobile's Motion to Dismiss (Doc. 18) and Reply brief (Doc. 35). A matter may be judicially noticed if it is either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See also Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (a court may take judicial notice of exhibits that are referenced in the complaint or matters in the public record without converting the motions into summary judgment motions).

On September 26, 2018, the court again found a lack of personal jurisdiction over Sprint Spectrum for the claims alleged. (Doc. 18-7). Specifically, the court found that additional allegations that Sprint Spectrum does business in California, owns and operates physical locations for sales in California, and communicates with customers in California, were insufficient to establish general jurisdiction over it. (Doc. 18-7 at 6). It also found that it lacked specific jurisdiction over Sprint Spectrum, noting that the party to the cell phone service contract with Plaintiff was Sprint Solutions, not Sprint Spectrum. (*Id.* at 6-7). The court rejected Plaintiff's argument that personal jurisdiction should be exercised over Sprint Spectrum because Sprint Spectrum was Sprint Solution's parent corporation, stating that "Plaintiff has neither alleged facts nor made any argument to suggest that the corporate form should be disregarded in this case." (*Id.* at 7). Finding that "it appears that Plaintiff's claims are in fact directed at a different corporate defendant than Sprint Spectrum," the court found that justice favored dismissal of the case, rather than transfer to a court with personal jurisdiction over the defendant. (*Id.*)[4]

Plaintiff further alleges that when the 2017 phone went missing, "instead of just filing a police report and once again reporting the violations to the FTC and FCC, [he] took the additional steps of contacting the Attorneys General of both Arizona and California. (Doc. 1 at 22). In a complaint to the Arizona Attorney General, Plaintiff reported that this was "the second time that a Sprint employee has gone into Plaintiff's account and that it was completely unacceptable that this is continuing to happen." (Doc. 1 at 22).[5] On October 10, 2017, the Arizona Attorney General's Office responded in a letter to Plaintiff,

---

[4] In his Complaint, Plaintiff states, "The US District Court for the State of California ruled in CV 8:18-CV-00615 that personal jurisdiction did not reside with the Court in California, but in Arizona where the first phone was allegedly converted." (Doc. 1 at 2-3). The California district court did not, however, make such a finding. Instead, as discussed more *infra*, the court simply pointed out that even if Plaintiff had named the correct defendant, which it had not, the events alleged had occurred in Arizona, not California, and thus could not serve to exercise specific jurisdiction over Defendant Sprint Spectrum. (Doc. 18-5 at n.3 ("these allegations and the related claims do not support the exercise of specific jurisdiction by a California court")).

[5] Plaintiff states that he brought the issue to the attention of the Arizona Attorney General because when he filed a police report in Los Angeles, it was transferred to Scottsdale, Arizona. (Doc. 1 at 23).

stating "[a]fter careful review, it has been determined there is a lack of clear facts and evidence to support criminal wrongdoing and the issues you've identified are civil in nature versus criminal." (Doc. 1-1 at 41). Plaintiff also filed a complaint with the Attorney General of California during this time period. In that response, that office informed him that it lacked jurisdiction over "matters already before the court or in matters where courts have already rendered a decision," but that his complaint would be retained to assess potential abusive business practices. (*Id.* at 39). Plaintiff claims that the inaction of these states' attorney generals amounts to contributory copyright infringement.

Plaintiff's Complaint, filed July 20, 2020, states seven causes of action. He brings claims of copyright infringement, breach of contract, breach of fiduciary duty, conversion, breach of privacy, and fraud against T-Mobile "as a result of [its] merger with Sprint Spectrum, L.P. ('Sprint')." He also brings claims of contributory copyright infringement against the FTC, the FCC, and the states of California and Arizona.

Each Defendant seeks dismissal of Plaintiff's Complaint and the claims pled against them. The Court will address each motion in turn.

## II. The United States' Motion to Dismiss (Doc. 28)

With regard to the United States, Plaintiff alleges that the FTC and the FCC contributorily infringed on his copyright when these agencies "did nothing to help" in his dispute with Sprint. The United States argues that the claim for contributory negligence cannot stand because it has not waived its sovereign immunity, and because Plaintiff has failed to properly state a claim upon which relief may be granted. The Court agrees that the United States is immune, and that this Court lacks subject matter jurisdiction over the claim. Accordingly, the Court need not reach Defendant's 12(b)(6) argument.

### A. Legal Standards

In order to assert a claim against a sovereign like the United States, there must first be "statutory authority vesting a district court with subject matter jurisdiction." *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007). But even where statutory authority vests the district court with subject-matter jurisdiction, the United States

or its agencies cannot be sued unless the United States has also expressly consented to be sued. *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1087–88 (9th Cir. 2007). *See also Ins. Co. of the West v. United States*, 243 F.3d 1367, 1372 (Fed. Cir. 2001) ("[A] suit against the government cannot proceed absent a waiver of sovereign immunity"); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000) ("[a] claimant has a claim against the United States only when the United States has consented to be sued by means of a waiver of sovereign immunity."). Failure to obtain a waiver of sovereign immunity is itself a jurisdictional bar. *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

Waivers of sovereign immunity must be unequivocally expressed, cannot be implied, and are to be strictly construed in favor of the sovereign. *Dunn*, 492 F.3d at 1087–88. The party asserting a claim against the United States or its agencies bears the burden of demonstrating this "unequivocal waiver of immunity." *Cunningham v. United States*, 786 F.2d 1445, 1446 (9th Cir. 1986). Sovereign immunity cannot be avoided by naming officers and employees of the United States as defendants. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1459 (9th Cir. 1985).

**B. Discussion**

28 U.S.C. § 1498(b) is the appropriate statute addressing waivers of sovereign immunity for copyright infringement by the United States.[6] This statute provides, in relevant part, that:

> W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement.

28 U.S.C. § 1498(b).

The language of §1498(b) makes clear that there are two statutory hurdles Plaintiff

[6] Plaintiff does not expressly bring his contributory infringement claim pursuant to 28 U.S.C. § 1498(b). However, because Plaintiff is *pro se*, the Court will liberally construe his pleadings as stating a cause of action under § 1498(b).

cannot overcome in his suit for contributory copyright infringement against the United States. First, the statute unequivocally states that the *exclusive* forum for a copyright infringement claim against the United States is in the Court of Federal Claims. 28 U.S.C. § 1498(b). The District Court of Arizona is not the Court of Federal Claims. This Court therefore cannot hear Plaintiff's copyright claim against the United States. *Jeter v. President of the United States*, 670 F. App'x 493 (9th Cir. 2016) ("The district court properly dismissed [plaintiff's] copyright infringement claims for lack of subject matter jurisdiction because [plaintiff] alleged those claims against the United States and individuals acting on behalf of the United States, and the Court of Federal Claims therefore has exclusive jurisdiction over those claims. *See* 28 U.S.C. § 1498(b).").

Second, the language of § 1498(b) shows that the United States has only waived sovereign immunity for *direct* copyright infringements—and then only when the infringing acts are committed by the Government, by a corporation controlled by the Government, or by a third party acting for the Government and with the Government's authorization or consent. 28 U.S.C. § 1498(b); *Boyle v. United States*, 200 F.3d 1369, 1372–73 (Fed. Cir. 2000). *See also Decca Ltd. v. United States*, 640 F.2d 1156, 1167 n.15 (Ct. Cl. 1980) (defining direct patent infringement as infringement that is "either through authorized actions of governmental employees or through actions by contractors specifically authorized by the Government"). Secondary liability, which encompasses both contributory and vicarious infringement,[7] is beyond the waiver of sovereign immunity in § 1498(b). *Id.* at 1167; *Cohen v. United States*, 98 Fed. Cl. 156, 170–71 (Ct. Cl. 2011). Here, Plaintiff asserts a claim of contributory copyright infringement against the United States based solely on its alleged failure to assist Plaintiff in his dispute with Sprint, the alleged infringer. In other words, Plaintiff makes no allegation that the United States directly infringed on his copyright, only that the United States failed to perform an adequate investigation into the alleged infringer's actions. Thus, even if this were the correct forum,

[7] *See Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes a copyright contributorily by intentionally inducing or encouraging direct infringement. . . and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.") (citations omitted).

which it is not, the acts of secondary liability alleged in Plaintiff's Complaint are beyond the scope of § 1498(b)'s waiver of sovereign immunity. Accordingly, the statute does not vest this Court with subject matter jurisdiction over Plaintiff's claim for contributory copyright infringement against the FTC or FCC.

Because Plaintiff cannot establish statutory subject matter jurisdiction over Plaintiff's claim of contributory copyright infringement against the United States, the United States' Motion to Dismiss will be granted, with prejudice.

## III. California's Motion to Dismiss (Doc. 12) and Arizona's Motion to Dismiss (Doc. 14)

Plaintiff brings claims of contributory copyright infringement against the states of California and Arizona pursuant to 17 U.S.C. § 511(a), The Copyright Remedy Clarification Act of 1990 ("CRCA"). California argues that Plaintiff has not established personal jurisdiction over California and that it is immune from suit under the Eleventh Amendment. (Doc. 12). Arizona argues that Plaintiff's claim is barred by the statute of limitations, does not allege a viable claim against the state, and is barred by the Eleventh Amendment. (Doc. 14). The Court finds that the Supreme Court's recent decision in *Allen v. Cooper*, 140 S. Ct. 994 (2020), is dispositive on the issue of the States' immunity and accordingly, both motions will be granted on that ground.

### A. Legal Standards

The Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Accordingly, private individuals generally may not bring suit against nonconsenting States, their agencies, or their departments in federal court. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Under limited circumstances, Congress may abrogate states' Eleventh Amendment immunity and permit suits by private individuals against states in federal court. *Kimel*, 528 U.S. at 80. States may also waive their immunity

by unequivocally expressing their consent to do so. *Pennhurst*, 465 U.S. at 99.

**B. Discussion**

The relevant part of the CRCA states that a State "shall not be immune, under the Eleventh Amendment [or] any other doctrine of sovereign immunity, from suit in Federal court" for copyright infringement, and that the State could be liable "in the same manner and to the same extent as" a private party in such a suit. 17 U.S.C. §§ 511(a); 501(a). In *Allen*, however, the Supreme Court held that the CRCA was a constitutionally deficient abrogation of States' immunity. *Allen*, 140 S. Ct. at 999. The Court specifically held that in passing the CRCA, Congress had exceeded its authority under Section 5 of the Fourteenth Amendment when it stripped the States of their sovereign immunity in all copyright infringement cases because such a remedy was not a congruent or proportional means to prevent copyright infringement by the States. *Id.* at 1005–06.

California and Arizona argue that Plaintiff's claims for contributory copyright infringement are barred following *Allen* because neither state has consented to waive immunity to such suits. Plaintiff does not present an argument to the contrary, but contends that California and Arizona should nonetheless be subject to suit because "just like the Plaintiff in *Allen v. Cooper*, Congress does not want states to have sovereign immunity when it comes to copyright infringement." (Doc. 25 at 13). Plaintiff's statement misses the significance of *Allen*. Courts have not questioned the clarity of the language Congress used in the CRCA to abrogate States' immunity. *See e.g.*, *Allen*, 140 S. Ct. at 1001 ("No one here disputes that Congress used clear enough language to abrogate the States' immunity from copyright infringement suits…there is no doubt what Congress meant to accomplish."). Instead, the issue before the Supreme Court in *Allen* was whether Congress had the constitutional authority to strip the states of their immunity from copyright infringement lawsuits. The Court found that Congress' otherwise unequivocal desire to strip the States of immunity in cases of copyright infringement exceeded its constitutional authority under the Fourteenth Amendment to enact such legislation. Thus, even though Plaintiff, Mr. Allen, and Congress may unequivocally "not want states to have sovereign

immunity when it comes to copyright infringement," *Allen* instructs this Court that this congressional mandate is unconstitutional and cannot be used to exercise jurisdiction over non-consenting states in copyright actions. Because *Allen* squarely answers the question as to whether non-waiving states can be found liable for copyright infringement in the negative, and Plaintiff has not established that California or Arizona have otherwise consented to be sued for contributory copyright infringement, the Court will grant California and Arizona's Motions to Dismiss, with prejudice.

**III. T-Mobile's Motion to Dismiss (Doc. 18)**

T-Mobile also moves to dismiss the claims in Plaintiff's Complaint. T-Mobile argues that the Court lacks personal jurisdiction over it for the claims alleged, and that the Complaint fails to allege any plausible claims or claims that are not barred by the applicable statute of limitations. Plaintiff also seeks to have Plaintiff declared a vexatious litigant.

The question of whether this court has jurisdiction must "be established as a threshold matter." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). Accordingly, though T-Mobile also contests the sufficiency of the claims brought against it, the Court must first address the matter of personal jurisdiction.

**A. Legal Standards**

A federal district court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Here, that state is Arizona. Arizona Rules of Civil Procedure state that Arizona courts may exercise personal jurisdiction "to the maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a). Under these constitutions, due process requires that the defendant have "certain minimum contacts" such that the lawsuit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Since *International Shoe*, courts have recognized two types of personal jurisdiction: general and specific. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A defendant is subject to a court's general jurisdiction where its activities in

the forum state are "so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* Specific jurisdiction, on the other hand, exists when the lawsuit "aris[es] out of or [is] related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). If a court lacks general and specific jurisdiction over a defendant, the court must dismiss the defendant under Federal Rule of Civil Procedure 12(b)(2).

Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. (12)(b)(2). Once a defendant has moved to dismiss, "the plaintiff is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction" over the defendant. *Cummings v. W. Trial Lawyers Assoc.*, 133 F.Supp.2d 1144, 1151 (D. Ariz. 2001) (internal quotations omitted); *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (noting that the plaintiff "bear[s] the burden of demonstrating that [personal] jurisdiction is appropriate"). When no evidentiary hearing is held, Plaintiff need only make "a *prima facie* showing of jurisdictional facts" establishing personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

A court may look to affidavits submitted by the parties in its determination of personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). *See also Chem Lab Prods., Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977) ("mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant"); *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (stating "we may not assume the truth of allegations in a pleading which are contradicted by affidavit"). However, "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

**B. Discussion**

Plaintiff concedes in his Response to T-Mobile's Motion to Dismiss that this Court does not have general jurisdiction over T-Mobile. (Doc. 30 at 6). The Court agrees that

on the record before it, general jurisdiction over T-Mobile is lacking. It will therefore assess whether it has specific jurisdiction over the claims Plaintiff has asserted against T-Mobile.

To establish specific personal jurisdiction, Plaintiff must make at least a preliminary showing that (1) T-Mobile purposefully directed its activities or consummated some transaction with Arizona or an Arizona resident or that T-Mobile performed some act by which it purposefully availed itself of the privilege of conducting activities in Arizona; and (2) Plaintiff's claims arose out of or related to T-Mobile's Arizona-related activities. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). If Plaintiff makes a preliminary showing of these two facts, the burden shifts to T-Mobile to show "the exercise of jurisdiction would not be reasonable." *Id.*

T-Mobile argues that the Court lacks specific jurisdiction over it because the Complaint only addresses "conduct by a subsidiary of Sprint in the 2015 and 2017 timeframe and does not allege any wrongdoing by the T-Mobile corporate entity named as a defendant." (Doc. 18 at 6-7). Plaintiff contends that the Court has specific jurisdiction over T-Mobile "due to the claims arising within the State of Arizona." (Doc. 30 at 7). He also argues that "[t]he entity issues cease to be a barrier due to the merger of T-Mobile with Sprint and its entities." (*Id.* at 3).

Even assuming that T-Mobile has purposefully availed itself of the privilege of conducting activities in Arizona (which the Court need not decide), Plaintiff has not met his burden of showing that his claims arise out of contacts with T-Mobile. T-Mobile correctly notes that the conduct alleged in Plaintiff's Complaint occurred in 2015 and 2017, years before the 2020 merger of T-Mobile and Sprint. T-Mobile was therefore not the corporate entity engaging with Plaintiff, and Plaintiff does not allege as much. Indeed, the record, which includes two court orders dismissing Plaintiff's related cases, clearly show Sprint Solutions was the entity to the contract that governed Plaintiff's cell phone service during these times. For reasons he does not explain, Plaintiff has not named Sprint Solutions as a defendant despite being on notice of this fact.

Plaintiff may be trying to argue that Sprint Solutions' contacts with Plaintiff should be imputed to T-Mobile as an alter ego of Sprint Solutions following the merger of T-Mobile and Sprint. This is a generous reading of Plaintiff's Complaint and Response, however, and it is unsupported by facts or evidence. T-Mobile represents that there is no cause to disregard the corporate form here because "the Sprint corporations still exist as subsidiary corporate entities" following the merger. It has attached SEC documentation supporting that fact to its Reply. (*See* Doc. 31 at 7 n.2; *see also* Doc. 31–2 at 16). Plaintiff has not rebutted this evidence. The Ninth Circuit has stated that:

> To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice. The "unity of interest and ownership" prong of this test requires a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former. This test envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation. Total ownership and shared management personnel are alone insufficient to establish the requisite level of control.

*Ranza v. Nike*, 793 F.3d 1059, 1073 (9th Cir. 2015).

Plaintiff has alleged no facts suggesting that the corporate form should be disregarded under this standard, or provided any other reason why Sprint Solutions' contacts or actions with Plaintiff should be imputed to T-Mobile. Accordingly, specific jurisdiction does not exist over T-Mobile, and T-Mobile's Motion to Dismiss will be granted.

## IV. T-Mobile's Request to Have Plaintiff Declared a Vexatious Litigant (Doc. 18)

The Court will now consider T-Mobile's request to have Plaintiff declared a vexatious litigant.

### A. Legal Standards

The All Writs Act, 28 U.S.C. § 1651(a), gives the Court the "the inherent power to enter pre-filing orders against vexatious litigants," which prevents litigants from filing any further actions or papers in the district court without first obtaining leave to do so. *Molski*

*v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (citation omitted). "Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *Id.* (citations omitted). However, "[a] court should enter a pre-filing order constraining a litigant's scope of actions in future cases only after a cautious review of the pertinent circumstances" due to the due process considerations that protect civil litigants' access to the courts. *Id.* "Out of regard for the constitutional underpinnings of the right to court access, 'pre-filing orders should rarely be filed,' and only if courts comply with certain procedural and substantive requirements. *Ringgold-Lockhart v. Cty. of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014) (quoting *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990)); *id.* ("In light of the seriousness of restricting litigants' access to the courts, pre-filing orders should be a remedy of last resort.").

To declare a party a vexatious litigant, a court must (1) provide the accused party with notice and an opportunity to be heard, (2) create an adequate record on which to decide the motion, (3) make substantive findings as to the frivolous or harassing nature of the litigant's actions, and (4) craft a narrowly-tailored order preventing the litigant's abusive behavior. *Id.* at 1057–58. The first two of these requirements are considered procedural, while the "latter two factors…are substantive considerations…[that] help the district court define who is, in fact, a 'vexatious litigant' and construct a remedy that will stop the litigant's abusive behavior while not unduly infringing the litigant's right to access the courts." *Molski*, 500 F.3d at 1058.

**B. Discussion**

On the record before it, the Court declines to declare Plaintiff a vexatious litigant. Prior to bringing this action, Plaintiff twice unsuccessfully asserted claims arising out of the same alleged wrongdoing. But as T-Mobile acknowledges, these claims were dismissed for lack of personal jurisdiction, not on the grounds that they were frivolous or did not state a claim. (Doc. 18 at 15). In fact, in dismissing Plaintiff's first complaint, the district court allowed Plaintiff twenty-one days to amend his complaint to add jurisdictional

allegations and/or name the correct defendant so long as Plaintiff could "do so consistent with Rule 11 of the Federal Rules of Civil Procedure." (Doc. 18-5 at 7). The Court's Order today similarly dismisses T-Mobile for lack of personal jurisdiction and accordingly does not rule on the merits of Plaintiff's claims. It is premature then to declare these claims "patently without merit." *Molski*, 500 F.3d at 1059. Moreover, in assessing whether a pre-filing order is justified, three cases are not typically considered an "inordinate" number of cases. *De Long*, 912 F.2d at 1148 ("even if [a litigant's] petition is frivolous, the court [must] make a finding that the number of complaints was inordinate"); *see also Ringgold-Lockhart*, 761 F.3d at 1065 (finding district court erred in finding plaintiffs vexatious litigants in part because "two cases is far fewer than what other courts have found 'inordinate'"); *id.* (comparing *Molski*, 500 F.3d at 1060 (finding district court did not abuse its discretion in finding plaintiff vexatious where a large number of the roughly 400 complaints contained false or exaggerated allegations of injury); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523, 1526 (9th Cir. 1983) (affirming district court's injunction where plaintiff had initiated thirty-five actions in thirty jurisdictions and more than 250 defendants).

T-Mobile's request is also inappropriate because other remedies, including those provided under Rule 11, are available to deter Plaintiff's alleged litigiousness. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("[W]hen there is…conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power."). *See also* Fed. R. Civ. P. 11 advisory committee's note to 1993 Amendments, subdivision (d). Rule 11(c)(4) provides a list of discretionary sanctions that courts may impose "to deter repetition of the conduct" including, "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* To the extent T-Mobile believes Plaintiff has violated Rule 11(b), it may make a separate motion for sanctions describing "the specific conduct that allegedly

violates Rule 11(b)."[8] A pre-filing order under these circumstances, however, would be an undue infringement on Plaintiff's access to the courts. T-Mobile's request is denied.

**V. Conclusion**

For the foregoing reasons,

**IT IS ORDERED** the United States' Motion to Dismiss (Doc. 28), California's Motion to Dismiss (Doc. 12), and Arizona's Motion to Dismiss (Doc. 14) are **granted, with prejudice**. Defendants FTC, FCC, California, and Arizona are **dismissed** from this action.

**IT IS FURTHER ORDERED** that T-Mobile's Motion to Dismiss (Doc. 18) for lack of personal jurisdiction is **granted**. Plaintiff's Complaint (Doc. 1) is therefore **dismissed**. If Plaintiff can comply with Rule 11 of the Federal Rules of Civil Procedure, Plaintiff has leave to file a First Amended Complaint alleging additional jurisdictional facts and identifying the correct defendant within **thirty (30) days** of the date this Order. If Plaintiff does not file a First Amended Complaint within **thirty (30) days** of the date this Order, the Clerk of Court shall dismiss this action without further order of this Court.

**IT IS FINALLY ORDERED** that T-Mobile's request to have Plaintiff declared a vexatious litigant (Doc. 18) is **denied**.

Dated this 16th day of June, 2021.

Honorable Diane J. Humetewa
United States District Judge

---

[8] Rule 11(c)(3) also allows the Court on its own initiative to order a party to show cause why certain conduct has not violated Rule 11(b).